## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

           Plaintiff,

           v.

HP INC., LIFETIME BRANDS, INC., PUERTO
RICO INDUSTRIAL DEVELOPMENT
COMPANY, and WALLACE SILVERSMITHS
DE PUERTO RICO LTD.,

           Defendants.

Civil Action No. 3:23-cv-1383 _____

**COMPLAINT**

The United States of America, by authority of the Attorney General of the United States
and through the undersigned counsel, acting at the request of the Administrator of the United
States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### NATURE OF THE ACTION

1.     In this civil action, the United States seeks an order, under Section 106 of the
Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"),
42 U.S.C. § 9606, requiring defendants to perform an environmental cleanup action, selected by
the U.S. Environmental Protection Agency ("EPA"), addressing hazardous substances present at
the San German Groundwater Superfund Site in San German, Puerto Rico.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action and the parties
under 28 U.S.C. §§ 1331, 1345, and 1367, and 42 U.S.C. §§ 9606(a) and 9613(b).

3.      Venue is proper in this district under 42 U.S.C. §§ 9606(a) and 9613(b) and 28 U.S.C. § 1391(b) and (c), because the Site is located, the claims arose, and the releases of hazardous substances that gave rise to these claims occurred within this judicial district.

## DEFENDANTS

4.      Defendant HP Inc. is incorporated under Delaware law.

5.      Defendant Lifetime Brands, Inc. is incorporated under Delaware law.

6.      Defendant Puerto Rico Industrial Development Company ("PRIDCO") is incorporated under Puerto Rico law.

7.      Defendant Wallace Silversmiths de Puerto Rico, Ltd. is incorporated under the laws of the Cayman Islands.

## STATUTORY BACKGROUND

8.      CERCLA was enacted in 1980 to protect the public health and welfare and the environment from the threats posed by releases and threatened releases of hazardous substances. 42 U.S.C. §§ 9604(a), 9601(25).

9.      Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1):

Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment …

10.     For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders, and, within certain

limits, the Regional Administrators and certain Division Directors of EPA have been redelegated this authority.

11.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

[W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may . . . secure such relief as may be necessary to abate such danger or threat …

12.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-
(1) the owner and operator of a vessel or a facility, [and]
(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
. . .
shall be liable for-
(A) all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan ...

## GENERAL ALLEGATIONS

### A.  Site Background

13.     From 2001 to 2005, groundwater samples collected quarterly from the Puerto Rico Aqueduct and Sewer Authority ("PRASA") public drinking water supply wells in San German regularly exhibited detectable concentrations of the hazardous substances tetrachloroethylene ("PCE") and cis-1,2-dichloroethene ("*cis*-1,2-DCE").  PCE also was detected in tap water samples from the community.

14.     Based on the levels of these pollutants in the groundwater and drinking water, the Puerto Rico Department of Health ordered PRASA to close three drinking water supply wells in early 2006.

15.     In June 2006, EPA collected groundwater samples near the closed drinking water supply wells and confirmed the presence there of PCE, trichloroethylene ("TCE"), and *cis*-1,2-DCE.

16.     Starting in July 2006, EPA investigated 44 industrial properties in the San German area to determine the source of the groundwater contamination.

17.     EPA concluded that the TCE, PCE, *cis*-1,2-DCE, and other volatile organic compounds were migrating into the groundwater from contaminated soil at two source areas within the Retiro Industrial Park located approximately one-half mile southeast of PRASA's drinking water wells.

18.     As shown from EPA's investigation, while the two soil contamination sources of groundwater contamination are separate, some the plumes then co-mingle as they migrate downgradient, *i.e.*, northwest toward PRASA's wells.

19.     Based on the results of its investigation, EPA listed the Site on the National Priorities List ("NPL") in 2008.  The NPL is a national list of hazardous waste sites posing the greatest threat to public health and welfare and the environment. *See* Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and 40 C.F.R. Part 300, App. B.

20.     The first source area surrounds buildings leased and occupied by Wallace Silversmiths de Puerto Rico, Ltd.  EPA calls this source area the "Wallace Lot."  EPA found high levels of chlorinated solvents including PCE, TCE and *cis*-1,2-DCE in the soil at the Wallace Lot.

21.     The second source area surrounds buildings that are now vacant but were formerly occupied by CCL Label, Inc. and related printing companies.  EPA calls this source

area the "CCL Lot."  EPA found high levels of chlorinated solvents including TCE, PCE, and *cis*-1,2-DCE in the soil at the CCL Lot.

22.     The contaminated soil in the two source areas acts as a continuing source of groundwater contamination.

23.     EPA has divided the cleanup work at the Site into two "operable units," Operable Unit 1 which focuses on eliminating the ongoing sources of groundwater contamination, and Operable Unit 2 which addresses the remaining contaminated groundwater.

24.     EPA has selected a cleanup for Operable Unit 1, which is documented in a "Record of Decision" executed on December 11, 2015.

25.     The Operable Unit 1 remedy involves extracting the hazardous substances from contaminated soil and shallow groundwater and, as needed, treating the hazardous substances *in-situ*.

26.     EPA also has selected a cleanup for Operable Unit 2 which is documented in a Record of Decision executed on September 30, 2019.

**B.  Disposal of Hazardous Substances at the CCL Lot**

27.     Digital Equipment Corporation de Puerto Rico ("DEC-PR") began its manufacturing operations in the Retiro Industrial Park in or about 1968.

28.     DEC-PR leased and occupied one or more buildings at the CCL Lot in the Retiro Industrial Park from approximately 1971 to approximately 1992.

29.     DEC-PR's operations at the CCL Lot included quality control laboratory testing of the computer components that it manufactured as well as the storage of chemicals in a warehouse.

30.     During its operations, DEC-PR released TCE to the soil at the CCL Lot.

31.     As of 1995, after DEC-PR left and before a new tenant occupied the CCL Lot, the soils at the CCL Lot were already contaminated with TCE and *cis*-1,2-DCE.

32.     DEC-PR was a wholly owned subsidiary of Digital Equipment Corporation ("DEC").  From 1968 through at least the 1980s, DEC managed, directed, and conducted operations of DEC-PR having to do with the leakage and disposal of hazardous wastes and with compliance with environmental regulations.

33.     DEC participated in DEC-PR's hazardous waste and environmental compliance operations during the time when DEC-PR released hazardous substances to the CCL Lot.

34.     DEC merged with Compaq Computer Corporation ("Compaq"), resulting in Compaq being the surviving entity, on or about December 9, 1999.

35.     Compaq merged with Hewlett-Packard Company, with Hewlett-Packard Company being the surviving entity, on or about April 30, 2004.

36.     Hewlett-Packard Company changed its name to HP Inc. on or about October 27, 2015.

37.     HP Inc. succeeded to and currently holds the liabilities of DEC.

**C. <u>Disposal of Hazardous Substances at the Wallace Lot</u>**

38.     Beginning on or about April 27, 2006, Wallace Silversmiths de P.R., Ltd. ("Wallace") began operating the Wallace facility, continuing silverware manufacturing operations that began at the Wallace Lot in approximately 1972.

39.     As of July 2006, Wallace employed a TCE solvent degreaser in its silverware manufacturing operation, was using about 566 gallons of TCE per year, and stored waste TCE sludge in deteriorating drums.

40.     There have been leaks and spills of TCE and TCE sludge from Wallace's operations, which contaminated the soils outside of its building.

41.     Wallace is a subsidiary of Syratech Acquisition Corporation. Syratech, in turn, is a subsidiary of Lifetime Brands, Inc. Lifetime Brands, Inc. managed and directed decisions about Wallace's compliance with environmental regulations.

**D.  PRIDCO**

42.     PRIDCO has owned the Retiro Industrial Park since at least 1968 and is the current owner of the industrial park.

43.     PRIDCO was the owner of the Retiro Industrial Park at the time that hazardous substances were released there.

**CLAIM FOR RELIEF**
**Injunctive Relief for Operable Unit 1 under CERCLA Section 106**

44.     The preceding Paragraphs are re-alleged and incorporated herein.

45.     The President, through his delegate, has determined that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of a release of hazardous substances or a threatened release of hazardous substances at and from the Site.

46.     The Site is a "facility" as defined in CERCLA, 42 U.S.C. § 9601(9), including the CCL Lot and the Wallace Lot.

47.     PCE, TCE, and *cis*-1,2-DCE are "hazardous substances" as defined in CERCLA. 42 U.S.C. § 9601(14).

48.     There have been releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of hazardous substances at or from the Site.

49.     Defendant HP Inc. is a successor-in-interest to DEC, which at the time of disposal of one or more hazardous substances was an operator at the Site.

50.     Defendant Wallace currently operates at the Site.

51.     Defendant Wallace operated at the Site at the time of disposal of one or more hazardous substances.

52.     Defendant Lifetime Brands, Inc. operated at the Site at the time of disposal of one or more hazardous substances.

53.     Defendant PRIDCO is the current owner of the Retiro Industrial Park portion of the Site, including the two identified source areas, the Wallace Lot and the CCL Lot.

54.     Defendant PRIDCO was the owner of the Retiro Industrial Park portion of the Site at the time of disposal of hazardous substances there.

55.     Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), defendants HP Inc., Lifetime Brands, Inc., PRIDCO, and Wallace are jointly and severally liable to perform the remedial actions identified in the Operable Unit 1 Record of Decision, which actions EPA has determined are necessary to abate a danger or threat with respect to contamination at the Site.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, the United States of America, prays that this Court:

A.     Enter judgment against the defendants and in favor of the United States ordering the defendants to perform the remedial actions identified in the Operable Unit 1 Record of Decision in order to abate the conditions at the Site;

B.     Grant the United States such other relief as the Court deems just and proper.

Respectfully submitted,

Ellen M. Mahan
Deputy Section Chief

8

U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section


Dated: July 26, 2023          <u>s/ Rachel Evans King</u>
                              Rachel Evans King
                              Senior Counsel
                              U.S. Department of Justice
                              Environment and Natural Resources Division
                              Environmental Enforcement Section
                              P.O. Box 7611
                              Washington, DC 20044-7611
                              202-514-5471
                              USDC-PR Bar No. G02610


                              W. Stephen Muldrow
                              United States Attorney
                              District of Puerto Rico

                              Lisa Bhatia
                              Assistant United States Attorney
                              District of Puerto Rico
                              Torre Chardón, Suite 1201
                              350 Carlos Chardón Street
                              San Juan, PR 00918

                              ATTORNEYS FOR THE UNITED STATES

Of Counsel:

Henry Guzman
Assistant Regional Counsel
New York Caribbean Superfund Branch
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, New York 10007
Phone: 212-637-3166

Andrea Leshak
Assistant Regional Counsel
New York Caribbean Superfund Branch
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, New York 10007
Phone: 212-637-3197